IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

```
ROBERT C. WELDON,              :
                               :
     Plaintiff                 :
                               :   CIVIL NO. 1:CV-04-0529
     vs.                       :
                               :   (Judge Caldwell)
LT. JEFF CYWINSKI, et al.,     :
                               :
     Defendants                :
```

*M E M O R A N D U M*

I.   *Introduction.*

Robert C. Weldon, an inmate at SCI-Dallas filed this civil rights action on March 11, 2004, pursuant to 42 U.S.C. § 1983, alleging that defendants retaliated against him after he filed several complaints against two non-defendant corrections officers. Weldon claims defendants failed to protect him from harm assault by his cellmate and then helped his assailant avoid criminal prosecution for the attack.

Presently before the Court is the defendants' motion for summary judgment.[1] We will evaluate the motion under the well

---

[1] The defendants are: Pennsylvania State Police Trooper Buzink, and the following Department of Corrections ("DOC") employees: Secretary Beard, Superintendent Donald Kelchner, SCI-Dallas' Superintendent James Wynder, Deputy Superintendents James McGrady and Thomas Stachelek, Grievance Coordinator Kenneth Burnett, Hearing Examiner Donald Jones, Lt. Jeffrey Cywinski; Capt. Michael Griego; Major Robert Komsisky; and Unit Manager Richard
(continued...)

established standard.  *See Glanzman v. Metropolitan Management Corp.,* 391 F.3d 506, 508 n. 1 (3d Cir. 2004).

The Court will grant the moving defendants' summary judgment motion based on Weldon's failure to exhaust his administrative remedies with respect to the DOC defendants.  As for Plaintiff's claims against Trooper Buzink, they are dismissed for failure to state a claim.

*II.    Background.*[2]

In September 2002, Weldon received a misconduct from two non-defendant corrections officers.  On September 3, 2002, Hearing Examiner Jones found Weldon "not guilty" of the charges.  On September 23, 2002, Weldon filed a grievance against the officers alleging harassment.  (Doc. 47, Plaintiff's Exhibit No. 30; *see also* Doc. 62-11, Plaintiff's Exhibits, No. 10.)  Weldon claims Grievance Coordinator Burnett failed to respond to this grievance.

---

[1](...continued)
Holmes.

[2]  Weldon's multiple submissions in opposition to the defendants' motion for summary judgment chronicle a variety of events involving various non-defendants and incidents that are not mentioned in the Complaint and thus are not viable claims or parties in this action.  However, we recite a small portion of this extraneous information for contextual purposes as Weldon claims the defendants in this action retaliated against him for his use of the prison grievance system and filing of complaints against prison staff with the Pennsylvania State Police and the DOC's Office of Professional Responsibility.

In November 2002 Weldon received a second false misconduct from the same non-defendant corrections officers. (Doc. 47, Plaintiff's Exhibit No. 3). Hearing Examiner Jones found Weldon guilty of all charges. In December 2002, Weldon filed a "grievance" to Superintendent Lavan for Burnett's failure to respond to his earlier grievance, No. 39500. (*See* Doc. 77-2, Exhibit 1, Grievance No. 3955). On January 9, 2003, Chief Grievance Coordinator Thomas James dismissed Weldon's "rejected grievance" as he "failed to comply with the provision(s) of DC-ADM 804, Inmate Grievance System." (Doc. 87-2, Plaintiff's Exhibits, January 9, 2003 letter). Weldon's grievance was rejected at the institutional level because it related to his receipt of a misconduct and therefore must be exhausted via DC-ADM 801, regarding Inmate Discipline, and not DC-ADM 804, the Inmate Grievance System. (*Id.*)

On January 3, 2002, Weldon sent a letter to the DOC's Office of Professional Responsibility requesting an investigation on the two non-defendant corrections officer's behavior. (Doc. 47, Plaintiff's Exhibit No. 30). On May 7, 2003, Weldon sent a letter to the Pennsylvania State Police (PSP) expressing his interest in pursuing charges against the same non-defendant officers. On May 18, 2003, he received a letter from the PSP advising him to utilize the DOC's complaint system. During a May

18, 2003, phone conversation with his father Weldon asked that he contact the PSP on his behalf.  On May 19, 2003, Plaintiff was given a pass to go to the Security Office to see Lt. Cywinski who questioned him why his father called the PSP. (*Id.*)

On May 22, 2003, Rich Holmes, Weldon's Unit Manager assigned Plaintiff to a cell with James Alward.  (Docs. 1 and 47). On May 29, 2003, Plaintiff advised Unit Manager Holmes that he is "not getting along" with Alward.  (Doc. 47, Plaintiff's Exhibit No. 30).

On June 25, 2003, at approximately 4:00 a.m., Alward assaulted Weldon who reported the attack to a block officer at 6:45 a.m.  (*Id.*)  Weldon was given a pass to the Security Office where he was interviewed by Lt. Cywinski and escorted to the infirmary.  (*Id.*)  Photographs were taken of Weldon's bruised right arm and right buttocks.  (*Id.*)  Weldon and Lt. Cywinski returned to the Security Office and Lt. Cywinski called the PSP to report the assault.  (*Id.*)  At approximately 8:30 a.m. Trooper Buzink arrived at the institution, questioned Plaintiff and took additional photographs of his injuries.  (*Id.*)  Tpr. Buzink issued Alward a non-traffic citation for harassment.  (Doc. 47, p. 5).

On July 30, 2003, Alward appeared before District Magistrate Tupper.  Weldon, Lt. Cywinski, Tpr. Buzink and several escorting officers were present for the hearing.  (Doc. 77-2, p.

3).  At the conclusion of the hearing, all charges against Alward were dismissed.  (Doc. 77-2, doc. 47).  Upon Plaintiff's return to SCI-Dallas, he was placed in administrative custody until staff interviewed Alward who stated he had no "hard" feelings against Weldon and would have no problems being housed next to him.  (Doc. 59, Defendants' Statement of Undisputed Material Facts).  Weldon was released from administrative custody on September 4, 2003.  (Doc. 47, Plaintiff's Exhibit No. 30).

*III.   Discussion*.

> *A.   Weldon's Exhaustion of Available Administrative Remedies as to his Claims against the DOC defendants Related to the June 25, 2003, assault by inmate Alward*.

Under the Prison Litigation Reform Act ("PLRA"), exhaustion of administrative remedies is required for all actions concerning prison conditions brought under federal law.  *See* 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 126 S.Ct. 2378 (2006).  The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532, 122 S.Ct. 983, 991, 152 L.Ed.2d 12 (2002).  The PLRA "completely precludes a futility exception to its mandatory exhaustion requirement."  *Nyhuis v.*

-5-

*Reno*, 204 F.3d 65, 71 (3d Cir. 2000).  The PLRA also mandates that inmates "properly" exhaust administrative remedies before filing suit in federal court.  *Woodford*, 126 S.Ct. at 2387.  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."  *Id*. at 2386.  Failure to substantially comply with procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim.  *Spruill v. Gillis*, 372 F.3d 218, 227-32 (3d Cir. 2004).

A prisoner does not have to allege in his complaint that he has exhausted administrative remedies.  *Ray v. Kertes*, 285 F.3d 287 (3d Cir.2002).  Failure to exhaust available administrative remedies is an affirmative defense.  (*Id*.)  As such, it must be pleaded and proven by the Defendants.  *Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002).

The Pennsylvania Department of Corrections ("DOC") has a three-level administrative remedy review process designed to address inmate problems that may arise during the course of confinement.  37 Pa. Code § 93.9(a); *see also* www.cor.state.pa.us, DOC Policies, DC-ADM 804, Inmate Grievance System Policy.  After an attempt to resolve any problems informally, an inmate may

submit a written grievance to the prison Grievance Coordinator for initial review.  An inmate may then appeal an adverse decision of the Grievance Coordinator to the Superintendent of the institution, and can finally appeal to the Secretary of the Department of Corrections Office of Inmate Grievances and Appeals.

Defendants assert that Weldon failed to properly exhaust his available administrative remedies with respect to all claims raised in this action.  In support of this assertion they submit the unsworn declaration of Tracy Pollock, a Grievance Review Officer with the Secretary's Office of Inmate Grievances and Appeals.  Pollock states that based on her review of the records maintained by the Secretary's Office of Inmate Grievances and Appeals, there are "no appeals from grievance decisions to this office submitted by Mr. Weldon."  (Doc. 67, Brief in Support of Motion for Summary Judgment, Attachment 1, Declaration of Tracy Pollock).  The absence of an appeal of a grievance to final review strongly suggests Weldon's failure to exhaust his administrative remedies with respect to claims raised in the Complaint.

To counter this strong presumption Weldon expresses two objections to Pollock's declaration.  First, Weldon suggests the Court should reject Pollock's declaration because she is not a named defendant in this action.  Weldon's objection is without merit.  Federal Rule of Civil Procedure 56(e) provides that an

-7-

affidavit offered in connection with a motion for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  Pollock's declaration satisfies all these requirements and thus will be considered by the Court.

Next, Weldon disputes Pollock's assertion that he has not appealed a grievance to final review.  He notes that he appealed the dismissal of grievance number 39500 to final review. (*See* Doc. 87-2, Chief Grievance Coordinator James' dismissal of Weldon's Appeal of Grievance No. 39500).  While it does appear that Weldon did appeal grievance 39500 to final review it is clear from Chief James' response that Weldon's grievance was not "properly" filed for exhaustion purposes and therefore was not decided on the merits of his grievance.[3]  We do not find this information to be at odds with Pollock's declaration.  Even if we were to consider that Weldon properly exhausted his administrative remedies with respect to grievance number 39500, that grievance is not at issue in this case and does not present a material factual dispute derailing our resolution of the question of whether Weldon

---

[3] Weldon's receipt of the misconduct grieved in that appeal, and any others received by Weldon, are not a subject of this action.

exhausted his administrative remedies with respect to the claims raised in this action.

When confronted with Defendants' assertion that Weldon has failed to exhaust his administrative remedies as to claims raised in the Complaint, Weldon does not suggest that he filed, or attempted to file, *any* grievance related to: (1) Lt. Cywinski's alleged retaliation against him for contacting the PSP regarding two non-defendant corrections officers and/or filing a grievance against them; (2) Lt. Cywinski's alleged interference with his "right" to contact the PSP to pursue criminal charges against the corrections officers who issued him an allegedly false misconduct or inmate Alward; (3) Unit Manager Holmes' action of changing his housing arrangements in retaliation for him contacting the PSP; and (4) any of the defendants' alleged failure to protect him from assault by Alward.  In fact, Weldon does not dispute his failure to exhaust these issues via the grievance system.  Weldon states that he did not pursue administrative remedies via the DOC's grievance process.  In his words, he claims "an inmate grievance consists to dealing with complaints within the DOC ... it is basically impossible for an inmate to file a grievance to the Pennsylvania criminal courts - it is not allowed!"  (Doc. 77-1, Weldon's Brief in Opposition to Defendants' Motion for Summary Judgment).  Weldon is mistaken.  We are not persuaded that Weldon

could not pursue the identified issues, against the DOC employees, within the DOC's grievance system.  Plaintiff's claims of retaliation and defendants' failure to protect him from harm are exactly the types of issues that the DOC's grievance system was designed to address and the PLRA required him to pursue prior to coming to federal court.  As Weldon does not dispute that he did not attempt to utilize the DOC's grievance system to pursue these claims, or that prison officials interfered with his ability to access the grievance system, we must presume that administrative remedies were available to Weldon but he failed to pursue them.  Accordingly, we must dismiss the Complaint in its entirety against the DOC defendants.[4]

>    B.   *Weldon Fails to State a Claims against Grievance Coordinator Burnett.*

Weldon names Grievance Coordinator Burnett as a defendant because he failed to properly process a September 2002 grievance charging that two non-defendant corrections officers filed a false misconduct against him.  Such an assertion, even if true, fails to rise to the level of a constitutional violation as

---

[4] Since the exhaustion of administrative remedies is a threshold issue, there is no need to consider Defendants' alternative arguments that the Complaint fails to state a valid § 1983 as to the DOC defendants.

inmates do not have a constitutionally protected right to the prison grievance process. *See Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991).  Likewise, "a state grievance procedure does not confer any substantive constitutional right upon prison inmates." *Hoover v. Watson,* 886 F.Supp. 410, 418 (D.Del. 1995), *aff'd.* 74 F.3d 1226 (3d Cir. 1995).  Furthermore, we note that when Burnett did respond to the grievance it was rejected as improperly filed via DC-ADM 804, the Inmate Grievance System, because it related to the receipt of a misconduct requiring Weldon to exhaust his administrative remedies as provided by DC-ADM 801, regarding Inmate Discipline.  For these reasons, Weldon fails to state a claim against Burnett.

> *C. Weldon Fails to State a Claim against Tpr. Buzink*.

The parties do not dispute that Lt. Cywinski called Tpr. Buzink to SCI-Dallas after Alward assaulted Weldon.  Tpr. Buzink investigated Weldon's claims and filed at least one charge of harassment against Alward.  Tpr. Buznik was also present at Alward's hearing before Magistrate Judge Tupper.  (*See* Doc. 77-1, Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment).

To the extent Weldon believes Tpr. Buzink should have charged Alward with assault rather than harassment he fails to

-11-

state a viable claim.  While it is clear that prisoners are entitled to access to the judicial system, Tpr. Buzink is not required to charge Alward with Weldon's choice of criminal charges.  *See Derreck-Bey v. Pennsylvania Dep't. of Corrections*, 98 F.Supp.2d 650, 664 (E.D. Pa. 2000).  Weldon cannot establish a claim under § 1983 against Tpr. Buzink because he cannot show that any of his constitutional rights were violated.

   *D. Weldon's Motion for Counsel.*

   After filing his materials in opposition to defendants' motion for summary judgment, Weldon filed a second motion for appointment of counsel.  (Doc. 105).  His unbriefed motion simply states that "plaintiff will need the assistance of counsel 'if' the issue(s) go to trial."  (*Id*.)  Based on our resolution of the defendants' motion for summary judgment which dispenses with the action in its entirety, Weldon's motion for counsel will be denied.

   An appropriate Order follows.


              <u>/s/William W. Caldwell</u>
              William W. Caldwell
              United States District Judge

Date: August 7, 2006

```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

  ROBERT C. WELDON,              :
                                 :
       Plaintiff                 :
                                 :    CIVIL NO. 1:CV-04-0529
       vs.                       :
                                 :    (Judge Caldwell)
  LT. JEFF CYWINSKI, et al.,     :
                                 :
       Defendants                :
```

*O R D E R*

AND NOW, this 7th day of August, 2006, for the reasons set forth in the accompanying Memorandum, it is ordered that:

    1. Defendants' Motion for Summary Judgment (doc. 59) is granted.

    2. The Clerk of Court shall enter judgment in favor of all Defendants, and against Plaintiff, and close this file.

    3. Based on our decision today, Weldon's Second Motion for Appointment of Counsel (doc. 105) is denied.

    4. Any appeal of this order would not be in good faith.

/s/William W. Caldwell  
William W. Caldwell  
United States District Judge